BURNS, SHERIFF, et al. v. DUNCAN.—133 S. W. (2d) 1000.

Middle Section. July 22, 1939.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

Whitaker & Whitaker, of Chattanooga, for plaintiffs in error.
Lee Douglas and J. B. Daniel, both of Nashville, for defendant in error.

FAW, P. J.   Carl Duncan, the plaintiff below (and hereinafter described as plaintiff), sued Frank Burns, Sheriff of Hamilton County, Tennessee, and Luke Mowery, Deputy Sheriff and Jailer of said County, in the Second Circuit Court of Davidson County, Tennessee, for damages, averring in his declaration that he had been by them "falsely imprisoned and illegally deprived of his liberty for a period of fifteen days."

Plaintiff also sued, in the same action, National Surety Corporation, a foreign corporation, as the surety on the official bond of defendant Frank Burns, Sheriff, etc.

The aforesaid defendants below (who will be hereinafter described as defendants) filed a plea in abatement, and, on the same day ("without waiving any defense relied upon in the plea in abatement") filed a plea tendering the general issue—not guilty.

The plea in abatement was heard and overruled by the Trial Judge, in the manner hereinafter more fully stated, and thereafter, at a subsequent term, evidence on behalf of the parties, respectively, was heard by the Court and a jury.

There is a discrepancy between the technical record and the bill of exceptions with respect to the issues decided by the jury. The recitals of the minutes of the Trial Court are as follows: "Came the parties by their attorneys, also a jury of good and lawful men of Davidson County, to-wit: (naming them), who being duly sworn to well and truly try the issues joined, and they having heard the evidence, argument of counsel and the charge of the Court, retired to consider of their verdict. Returning into open Court the jury on their oaths do say they find the issues joined in favor of the plaintiff and by reason of the premises assess his damages in the sum of $1000.00."

The reasonable inference from the foregoing recitals of the technical record is that the jury found the issues made by defendants' plea of not guilty to the plaintiff's declaration in favor of the plaintiff; but it appears from the bill of exceptions that the Trial Judge instructed the jury that (for reasons stated in his charge) "the only question that is before the jury is a question of the amount of damages to be awarded the plaintiff by reason of his incarceration."

Upon the verdict returned by the jury, the Court rendered judgment for the plaintiff and against the three defendants for the sum of one thousand dollars, and also for all the costs of the cause.

In due season, defendants filed a motion for a new trial, which was overruled by the Trial Court. The defendants, reserving an exception, prayed an "appeal" to this Court, which was granted by the Trial Court and perfected by the defendants.

The "appeal" in this case will be treated as an appeal in the nature of a writ of error, as a simple appeal does not lie from a judgment in an action at law. Spalding v. Kincaid, 1 Shan. Cas., 31; Manley v. Chattanooga, 1 Tenn. App., 65.

In this Court, the defendants have filed assignments of errors, which may, in substance, be briefly summarized as follows:

Through their first assignment, the defendants complain of the action of the Trial Court in overruling their plea in abatement.

Through their second, third, fifth and sixth assignments, defendants assert that the verdict was excessive, and in each of said four assignments a different reason is advanced for such contention.

The fourth assignment is that "the verdict is against the preponderance of the evidence" (which "presents no question that can be considered by this Court." Railroad Co. v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3, 4).

Through their seventh assignment, defendants assert that the Trial Court erred in refusing to grant them a new trial because of certain alleged newly discovered evidence with respect to the "unreliability" of the evidence contained in certain depositions, known in the record as the "Texas depositions," and whether said depositions were "properly taken."

The eighth assignment is predicated upon the alleged omission from the Court's charge to the jury of instructions on certain subjects specified in the assignment.

The ninth (and last) assignment complains, in general terms, of the overrulement of the motion for a new trial and the refusal of the Trial Court to order a remittitur.

The defendants' plea in abatement, in effect, challenged the jurisdiction of the Court below, and the first assignment of error, supra, manifestly presents the question which should be first considered here.

The plea in abatement asserts two distinct and independent grounds upon which the defendants insist that plaintiff's action brought in the Circuit Court of Davidson County should be abated.

The first contention of defendants in support of their plea in abatement is, in substance, that the plaintiff's action is not transitory, but is, by statute, localized in Hamilton County.

The second reason offered in the plea for the abatement of the suit is that there was no proper service of process in Davidson County on any defendant which would authorize the issuance of counterpart summons by the Court of Davidson County (to Hamilton County) for the defendants Burns and Mowery.

The plea in abatement was overruled by the Trial Judge approximately one year in advance of the trial by jury, as appears from a minute entry of the Trial Court as follows:

"This cause came on to be heard before me this 22nd day of May, 1937, upon the entire record in this case, and more especially upon the plea in abatement heretofore filed by the defendants, the joinder of issue thereon by plaintiff, and the power of attorney filed with the Insurance Commissioner of Tennessee on May 18, 1933, by the National Surety Corporation and offered on behalf of plaintiff and made a part of the record by stipulation with the defendants the same as if the original were proven, and it being also stipulated that said power of attorney had not been revoked but was in effect.

"Whereupon, after argument of counsel and due consideration thereof, the Court is of opinion that said plea in abatement is not well taken, and

"It is ordered that said plea be, and the same is, hereby overruled and dismissed, to which action of the Court the defendants excepted. The defendants having also filed their plea of not guilty, it is ordered that said cause stand upon the trial docket of this Court for trial."

Inasmuch as the plea in abatement and the plea in bar were filed at the same time, and the plaintiff joined issue on the plea in abatement, it would seem (in view of Section 8756 of the Code, which provided that in such circumstances "both pleas shall be heard at the same time, and judgment rendered on each plea"), that the proper practice would have been for the issues made by both pleas to have

been tried by the jury at the same time. Railroad Co. v. McCollum, 105 Tenn., 623, 59 S. W., 136; Allen v. Cherokee Motor Coach Co., Inc., 20 Tenn. App., 446, 449, 100 S. W. (2d), 240, 241.

But, although the defendants excepted to the action of the Court in overruling their plea in abatement, it does not appear that the defendants interposed any objection below to the hearing on the plea in abatement by the Court without a jury and in advance of the trial by the jury on the plea in bar, and there is no error assigned on that ground in this Court.

The bill of exceptions discloses certain evidence relating to the qualification and official bond of defendant Frank Burns, Sheriff of Hamilton County, with defendant National Surety Corporation as surety thereon, which evidence (in view of certain statutes hereinafter pointed out) would have been relevant and material to the issue made by the first ground of the plea in abatement, if that issue had been tried by the jury; but we assume that the ruling of the Trial Judge on the plea in abatement must be reviewed on the record as it stood at the time said plea was overruled.

Taking up the question of venue raised by the first ground of the plea in abatement:

The record before the Trial Court on the hearing of the plea in abatement consisted of the process, with the returns of the executing officers thereon, the plaintiff's declaration, the defendants' plea in abatement, and (as appears from recitals in the above quoted judgment overruling the plea) "the power of attorney filed with the Insurance Commissioner of Tennessee on May 18, 1933, by the National Surety Corporation and offered on behalf of plaintiff and made a part of the record by stipulation with the defendants the same as if the original were proven, and it being also stipulated that said power of attorney had not been revoked but was in effect."

It appeared from the process that a summons for the three defendants was issued to Davidson County, and service thereof on National Surety Corporation was acknowledged by J. S. Tobin, Insurance Commissioner, and the return thereon shows that the executing officer was "unable to find Frank J. Burns and Luke Mowery" in his County (Davidson); that another summons, marked "counterpart" and addressed to the Sheriff of Hamilton County, was issued, and was returned by a Deputy Sheriff of Hamilton County, whose return shows that he executed it "by summoning Frank P. Burns, Sheriff of Hamilton County and Luke Mowery, Jailer at the Hamilton County jail" as commanded.

The cause of action stated in each summons is "false imprisonment and wrongful and wilful illegal mistreatment;" but "the cause of action includes all the facts which together constitute the plaintiffs' right to maintain the action" (Mattix v. Swepston, 127 Tenn., 693, 697, 155 S. W., 928, 929); hence we may look to the

plaintiff's declaration for a fuller statement of the "facts" upon which he sought to predicate his action.

The declaration is as follows:

"Plaintiff, Carl Duncan, sues the defendants Frank P. Burns, Sheriff of Hamilton County, and Luke Mowery, Deputy Sheriff, and Jailor of said County, and National Surety Corporation, a foreign Corporation but domesticated in Davidson County, Tennessee, where it has agents and where it transacts much surety business, for Five Thousand Dollars damages and for cause of action avers that:

"He has relatives residing in Sequatchie Valley, Marion County, Tennessee, who have lived there for many years, and it had been some time since Plaintiff had seen them, and a short while prior to April 29th, 1935, Plaintiff, whose home was in the State of Texas, made a visit to his Sequatchie Valley relatives and while there learned for the first time that some of his relatives were operating a small still as a means of making a living, and his said relatives were arrested by United States officers, charged with illegally operating a still, and Plaintiff, a visitor, who was there was also arrested, but upon the trial he was sentenced by United States Judge Taylor to serve a sentence of ten days in the Hamilton County Jail. And so on April 29th, 1935, a ten-day sentence was pronounced against him and in accordance with the Court order, Plaintiff was turned over to Defendant Burns, Sheriff, and to Defendant Mowery, Deputy Sheriff and Jailor under said Burns, and on that day began serving his ten days sentence in the Hamilton County Jail. His time expired with May 8th, 1935, at which time he was entitled to his freedom, release and discharge, but said defendants arbitrarily, wantonly, willfully and with the utmost indifference to plaintiff's rights, kept him incarcerated in the aforesaid jail for an additional fifteen days over his vigorous protest, and in spite of all he could do.

"And Plaintiff avers that, although he had served his ten days sentence and was entitled to his release on or at the end of May 8th, 1935, and although defendants were fully aware of the facts, they nevertheless refused to release him and without a legal right to do so by force of the power and authority they possessed, willfully maliciously, wantonly and in reckless disregard of Plaintiff's rights, held him in jail for an additional fifteen days, and during this time Plaintiff was doing everything in his power to get in touch with friends or with lawyer or the Judge, but said defendants arbitrarily refused him this privilege, and thereby deprived him of his Constitutional rights and privileges. Finally he managed to get a letter to a relative who came to his rescue, and he was finally released by said defendants after having been falsely imprisoned and illegally deprived of his liberty for a period of fifteen days. Plaintiff was greatly humiliated, depressed and hurt in his feelings by being thus arbitrarily kept in jail for these fifteen days, and the good name and

reputation that he had sustained previously had been thereby impaired and he lost valuable time. Plaintiff had made arrangements to make a crop in Texas, but this unlawful fifteen days detention prevented him making a crop and this was an additional damage that he sustained and for which he sues.

"The defendant, National Surety Corporation, had issued to said Frank P. Burns, Sheriff, a bond in a sum in excess of the amount sued for in this case, which was in full force at the time of Plaintiff's unlawful detentions aforesaid for the faithful performance of his official duties, and this bond also covers the breach of duty by his Deputy and Jailor Mowery for whose conduct the Sheriff and his official bond is liable.

"Plaintiff demands that defendants produce and file said bond as Plaintiff has no access to it, or a copy, and is therefore unable to make profert of same. Defendants, though liable, refuse to pay, and hence plaintiff sues them for both compensatory and punitive damages in the sum of Five Thousand Dollars, and calls for a jury to try the issues."

It is seen that certain salient facts (or averments by plaintiff of matters of fact) are disclosed by plaintiff's declaration as follows: (1) the plaintiff is not a resident of the State of Tennessee; (2) defendant Frank P. Burns is the Sheriff of Hamilton County, Tennessee, and defendant Luke Mowery is a Deputy Sheriff and the Jailer of Hamilton County, Tennessee; (3) plaintiff "was sentenced by United States Judge Taylor to serve a sentence of ten days in the Hamilton County jail", which sentence he served, and, after he had served his said sentence of ten days, the defendants Burns, Sheriff, and Mowery, Deputy Sheriff and Jailer, "kept him incarcerated in the aforesaid jail for an additional fifteen days over his vigorous protest and in spite of all he could do"; (4) the defendant National Surety Corporation is a foreign corporation, domesticated in Davidson County, Tennessee, where it has agents; and (5) said defendant National Surety Corporation is the surety on the official bond of defendant Frank P. Burns as Sheriff of Hamilton County, and is sued in that capacity only.

We may observe, in passing, that a separate action may not be maintained against the surety on an official bond, as may be maintained against a surety or endorser on a negotiable instrument. The liability of a surety on an official bond must, in its final analysis, depend upon the liability of the principal. Kendrick v. Moss, 104 Tenn., 376, 380, 381, 58 S. W., 127; Sanford v. Spivey, 1 Shan. Cas., 117, 118.

Sections 3945 to 3959, inclusive, of the Code, relate to "Fidelity or Bonding Companies". Section 3950 provides as follows:

3950. "Companies may be sued, where.—Any surety company doing business under the provisions of this law may be sued in re-

spect thereof in any court which has now, or hereafter may have, jurisdiction of actions or suits upon such recognizance, stipulation, bond, or undertaking in the county in which such recognizance, stipulation, bond, or undertaking was made or guaranteed, or in the county in which the principal office of such company is located; and, for the purposes of this law, such recognizance, stipulation, bond, or undertaking shall be treated as made or guaranteed in the county in which the office is located, to which it is returnable or in which it is filed, or in the county in which the principal in such recognizance, stipulation, bond, or undertaking resided when it was made or guaranteed. (Ib., sec. 5)''

■ It is seen that Section 3950 applies to ''any surety company doing business under . . . this law'', and it is, we think, clear from the preceding sections 3946, 3947 and 3948, that Section 3950 applies to ''a corporation incorporated under the laws of the United States, of this state, or any state, having power to guarantee the fidelity of persons holding positions of public or private trust.''

It will be observed that Section 3950, supra, provides that such surety company may be sued (1) in the county in which such bond ''was made'', or (2) ''in the county in which the principal office of the company is located''; and further provides that (for the purpose of determining the county in which it was made), the bond shall be treated as made ''in the county in which the office is located, to which it is returnable or in which it is filed, or in the county in which the principal in such . . . bond . . . resided when it was made.''

■ As before pointed out, Section 3950 applies to both non-resident and domestic Fidelity and Bonding Companies, and we think it manifest that the alternative provision for suit ''in the county in which the principal office of [the] company is located'' primarily contemplates a suit against a bonding company incorporated under the laws of this state, as the principal office of a non-resident corporation is not ordinarily in any county of this State. Certainly there is nothing in the record now before us which shows, or from which it could be inferred, that the principal office of defendant National Surety Corporation (which is admittedly a ''foreign corporation'') is in Davidson County, or any other county in this State.

It, therefore, becomes necessary to ascertain the county in which the bond ''was made.'' If, in making this inquiry, we could have access to the evidence introduced by the plaintiff before the jury, it would be quite clear that the bond here in question was made in Hamilton County. But, aside from the evidence before the jury, we think this fact sufficiently appears from the record before the Trial Judge at the time he disposed of the plea in abatement, when that record is considered in connection with certain statutes pertinent to the inquiry.

■ It is a necessary inference from the fact that, at the times in question, defendant Frank P. Burns was Sheriff of Hamilton County, and defendant Luke Mowery was Deputy Sheriff and Jailer of said County, that the official and personal residence of both of said defendants was in Hamilton County. The counterpart summons in this case was served on them in that County.

Sections 690 and 691 of the Code read as follows:

690. ''Sheriff's bond.—The sheriff, before entering on the duties of his office, shall give bond, with good security, in a penalty of not less than twelve nor more than fifty thousand dollars, at the discretion of the court, payable to the state, and conditioned well and truly to execute and due return make of all process to him directed, and to pay all fees and sums of money by him received or levied by virtue of any process into the proper office, or to the person entitled, and faithfully to execute the office of sheriff, and perform its duties and functions during his continuance therein.''

691. ''Same.—This bond shall be acknowledged before the county court, in open court, approved by it, and recorded upon the minutes, and filed among its records, and a certified copy sent to the comptroller of the state.''

The plaintiff is suing the defendant National Surety Corporation as surety on the official bond of defendant Frank P. Burns, Sheriff of Hamilton County, which bond, plaintiff avers, ''was in full force, at the time of plaintiff's unlawful detention aforesaid, for the faithful performance of his official duties etc.''

■ Webster's International Dictionary defines the word ''returnable'' (in law) as ''legally required to be returned, delivered or rendered''; hence, when Section 3950 of the Code is read in connection with Section 691 thereof, it follows that, under the law, the official bond of the Sheriff of Hamilton County was ''returnable'' to the County Court of Hamilton County.

■ In the absence of proof to the contrary (and, a fortiori, in the absence of averment to the contrary), it will be presumed that official acts or duties have been properly performed, and that everything done by an officer in connection with the performance of an official act in the line of his duty was legally done. Siler v. Siler, 152 Tenn., 379, 382, 277 S. W., 886; Lummus Cotton Gin Co. v. Arnold, 151 Tenn., 540, 558, 269 S. W., 706; Dunlap v. Sawvel, 142 Tenn., 696, 707, 223 S. W., 142; Railroad Co. v. Horne, 106 Tenn., 73, 78, 59 S. W., 134.

■ Hence, in the instant case, it will be presumed that defendant Frank P. Burns executed an official bond as Sheriff of Hamilton County, and that said bond was acknowledged before the County Court of that County, in open court, approved by that Court, recorded upon its minutes, and filed among its records, and a certified copy thereof sent to the Comptroller of the State—all as required by Sections 690 and 691 of the Code.

"Originally, at the common law the right of trial by jury fixed the venue in every action at the locality where the fact arose" (Haynes v. Woods, 151 Tenn., 163, 165, 268 S. W., 632); but "actions may be made by statute either transitory or local", and "actions are either transitory or local, and their nature cannot be changed by the form of the process used to institute them." Nashville v. Webb, 114 Tenn., 432, 435, 436, 85 S. W., 404, 405, 4 Ann. Cas., 1169; Haynes v. Woods, supra.

With reference to the matter of venue, the main contention on behalf of the plaintiff is, in substance, that Section 3950 of the Code merely provides a cumulative remedy. Much reliance seems to be placed upon the opinion in Cartmell v. Mechanics' Insurance Co., 167 Tenn., 498, 71 S. W. (2d), 688; but that case (especially when read in connection with the subsequent cases of Carroll v. Matthews, 172 Tenn., 590, 113 S. W. (2d), 742, and Carter v. Schackne, 173 Tenn., 44, 114 S. W. (2d), 787), is, we think, authority for the proposition that the venue in the instant case was in Hamilton County ("the county of action"). Carroll v. Matthews, supra, 172 Tenn., 592, 113 S. W. (2d), 742.

In Cartmell v. Insurance Co., supra, 167 Tenn., at page 501, 71 S. W. (2d), at page 689, the Court said: "The unrevoked power of attorney constituted the commissioner of insurance the defendant's agent in the several counties of the state, and localized the trial at the residence of complainant in Madison county." See, also, McClearen v. United States Fidelity & Guaranty Co., 168 Tenn., 268, 279, 77 S. W. (2d), 451.

If it be conceded that the Insurance Commissioner was authorized by the unrevoked power of attorney to acknowledge service of process against defendant National Surety Corporation, it does not follow that the venue of the action was in Davidson County, the official residence of the Insurance Commissioner. This is made clear by the opinions in the last cited four opinions, supra, in each of which the venue was determined upon other considerations, although process was served upon the Insurance Commissioner or the Secretary of State in Davidson County.

It seems too clear to need citation of authority that the Court of Davidson County could not obtain jurisdiction of defendants Burns and Mowery by service of counterpart summons upon them in Hamilton County, unless service on the Insurance Commissioner, of the summons for the surety on the official bond of defendant Burns, Sheriff, fixed the venue in Davidson County. This would be contrary to the manifest legislative intent of Section 3950 of the Code, supra. This Section indicates no purpose to authorize "ambulatory actions" against non-resident sureties on official bonds, and "conveys no suggestion of an intention to let the complaining party select any one of the several counties of the state as the situs for

trial'', nor indicates a purpose to fix a venue at the residence of the Insurance Commissioner. Carroll v. Matthews, supra.

We think that Section 3950, supra, is mandatory. The wording is that any surety, etc, ''may be sued,'' etc., but the word ''may'', in statutes, has been frequently construed as imperative, and meaning the same as ''shall''. 59 C. J., page 1082, section 635, citing a large number of cases from many jurisdictions.

It has been so held in several reported cases in this State, and, among them, the early case (1852) of Barnes v. Thompson, 2 Swan, 313, 317, wherein it was held that, when the Act (with reference to the enforcement of mechanics liens) said that ''the lien hereby given may be enforced by attachment'', the word ''may'' would be construed as having the same meaning as the word ''shall,'' and as imperative; and the suit must be by attachment.

The rule of construction just stated has been followed in several later cases in this State, but we think it sufficient to cite the recent case of Fiske v. Grider, 171 Tenn., 565, 571, 106 S. W. (2d), 553, 555, in which the Court applied the rule that ''in statutory construction the word 'may' is frequently construed to mean 'shall,' '' and held (with citation of authorities) that Section 8106 of the Code, which provides that, ''Persons may be permitted to have an issue made upon any will, either as plaintiffs or defendants, in the form prescribed for paupers'' is ''mandatory''.

In order to ascertain whether a statute is permissive or mandatory, the principal considerations are the nature and object of the statute, and the consequences that would result from construing it one way or the other. 59 C. J., pages 1072, 1073, section 631.

''The court will, if possible, place upon the statute a construction which will not result in . . . prejudice to the public interest''. 59 C. J., pages 970, 971, section 574.

The obvious legislative intent, in the enactment of section 3950 of the Code, was, we think, to fix the venue of actions on the bonds thereby covered, exclusively in the county where the bond ''was made'' (which was defined to be the county in which the office is located to which the bond is returnable or in which it is filed, or in which the principal in the bond resided when it was made). If construed as merely permissive, or directory, Section 3950 would have been a mere brutum fulmen, for without such statute it could not be doubted that the courts of Hamilton County would have jurisdiction of an action against the Sheriff of that County and the surety on his official bond. The question here is whether it was intended by Section 3950, to give the courts of the County in which such bond ''was made'' exclusive jurisdiction?

As applicable to official bonds, Section 3950 tends strongly to promote a sound public policy. Public officers should be permitted to remain in their own counties and discharge their duties to the

public, instead of being called to distant counties of the State to defend actions brought against them and their surety for defaults on their official bonds. If it was not the legislative intent of Section 3950 to localize such actions in the county wherein the bond "was made", we can see no purpose in its enactment. As said by Mr. Justice Cardozo, in Matter of Rouss, 221, N. Y., 81, 91, 116 N. E., 782, 785; "consequences cannot alter statutes, but may help to fix their meaning."

■■■ Section 3950, supra, does not, in terms, declare that no courts other than those designated therein shall have jurisdiction, but the affirmative designation of the courts by which the jurisdiction may be exercised implies a negative on the exercise of such jurisdiction by other courts. Durousseau v. United States, 6 Cranch, 307, 314, 3 L. Ed., 232, 234.

It is insisted, in the brief for plaintiff, that "the identical question" raised by the plea in abatement in the instant case was decided adversely to the contention of the present defendants in the case of Burger v. Parker, 154 Tenn., 279, 290, S. W., 22. It appears from the opinion in that case that Burger, a resident of Hamilton County, Tennessee, sued Parker, the Sheriff of Marion County, Tennessee, and his official bondsmen, to recover damages for an assault committed upon Burger by said Sheriff in Marion County. The Sheriff and his bondsmen pleaded in abatement that the suit could not be prosecuted in Hamilton County for the reason that the cause of action was local and not transitory. The Trial Court sustained the plea in abatement, and the plaintiff appealed. The Supreme Court reversed the judgment and remanded the case for further proceedings—holding that the action was transitory, because the plaintiff, Burger, "could have been injured, by assault, in any county in the state".

Burger v. Parker was decided in 1926, and, therefore, prior to the adoption of the Code of 1932; but this is immaterial for the reason that Section 3950 of the Code, supra, was taken from the Act of 1895, chapter 175, section 5 (Shan. Code, sec. 2218), which was in force at the time of said opinion in Burger v. Parker.

However, we do not think that the opinion in the case of Burger v. Parker is controlling authority in the instant case, for the reason that the above cited statute invoked by the defendants in the case now before us was not brought to the attention of the Court, and was not in the mind of the Court, when Burger v. Parker was decided.

It is evident that the failure of the Court to consider said Act of 1895, chapter 175, section 5 (now Section 3950 of the Code of 1932) was due to the oversight of counsel. This is obvious from an exerpt from the opinion, as follows:

"In 40 Cyc. 87, it is said: 'Actions, in nature of trespass or trespass on the case, against public officers for acts of omission or com-

mission in the conduct of an office, were transitory at common law; but by statute many of such actions were localized. Similar legislation followed in America at an early day, but not in all states.'

"In the same book, on page 85, note 10, it will be noted that in most of the states such actions have been localized by statute, but it is conceded that no statute of this character exists in Tennessee."

It is seen that, upon the concession of counsel that no statute localizing the action existed in Tennessee, the Court proceeded to decide the case without reference to the statute invoked by defendants in the instant case, which, in our opinion, does localize the action.

"The generality of the language used in an opinion is always to be restricted to the case before the court, and it is only authority to that extent. The reasoning, illustrations, or references contained in the opinion of a court, are not authority, not precedent, but only the points in judgment arising in the particular case before the court." Louisville & N. R. Co. v. County Court, 1 Sneed, 637, 695, 62 Am. Dec., 424; Clark v. Lary, 3 Sneed, 77, 80.

In the case of State ex rel. v. Baseball Club, 127 Tenn., 292, 307, 154 S. W., 1151, 1155, Ann. Cas., 1914B, 1243, the Court said:

"It is a familiar principle that stare decisis only applies with reference to decisions directly upon the point in controversy. The point in controversy here as to the proper passage of this bill by the Senate was not considered in Hayes v. State.

"Only the points in judgment arising in a particular case before the court are precedents for future decisions. Clark v. Lary, 3 Sneed, 77; Louisville, etc., R. Co. v. County Court, 1 Sneed, [637], 638, 62 Am. Dec., 424.

"The Supreme Court of the United States has said:

" 'Doubtless the doctrine of stare decisis is a salutary one and to be adhered to on all proper occasions; but it only arises in respect of decisions directly upon the points in issue.' Pollock v. Farmers' Loan & Trust Co., 157 U. S., 429, 574, 15 S. Ct., 673, 687 (39 L. Ed., 759)." See other cases in accord cited in Prudential Insurance Co. v. Davis, 18 Tenn. App., 413, 433, 78 S. W. (2d), 358.

For the reasons hereinbefore stated, we are of the opinion that the learned Trial Court erred in overruling the defendants' plea in abatement; and the defendants' first assignment of error is sustained.

In view of our ruling above stated on the first assignment of error, the remaining assignments of error become immaterial, and their consideration is pretermitted.

It results that the judgment of the Circuit Court is reversed, the verdict of the jury is set aside, the defendants' plea in abatement is sustained, and the plaintiff's suit is dismissed.

The costs of the cause, including the costs of the appeal, are adjudged against the plaintiff Carl Duncan, and the sureties on

his prosecution bond for costs in the Circuit Court. Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, 704.

Crownover and Felts, JJ., concur.