STATE of Tennessee ex rel. Mary Ann HUSKEY, by Next Friend, David Kozlowski, Petitioner–Appellee,

v.

Sue HATLER, Superintendent of Highland Rim School for Girls, and C. Murray Henderson, Commissioner of the Tennessee Department of Correction, Respondents–Appellants.

STATE of Tennessee ex rel. Benny L. Lynn JOHNSON, by Next Friend, David Kozlowski, Petitioner–Appellee,

v.

Howard G. COOK, Superintendent of the Spencer Youth Center and C. Murray Henderson, Commissioner of the Tennessee Department of Correction, Respondents–Appellants.

STATE of Tennessee ex rel. Billy Nelson NARMORE, Petitioner–Appellee,

v.

Howard G. COOK, Superintendent of the Spencer Youth Center and C. Murray Henderson, Commissioner of the Tennessee Department of Correction, Respondents–Appellants.

Supreme Court of Tennessee.

Oct. 14, 1980.

Robert A. Grunow, Asst. Atty. Gen., Nashville (William M. Leech, Jr., Atty. Gen., Nashville, of counsel), for respondents–appellants.

Charles A. Daughtrey, William P. Purcell, III, David Kozlowski, Vanderbilt Legal Aid Society, Vanderbilt Law School, Nashville, for petitioners–appellees.

## OPINION

BROCK, Chief Justice.

The Court has consolidated, for purposes of argument and decision, these three *habeas corpus* proceedings brought by three juveniles, each of whom challenges the constitutional validity of his or her commitment to the Department of Correction upon the ground that each was denied the benefit of legal counsel in the commitment proceedings in juvenile court. Mary Ann Huskey was committed by the Juvenile Court for Sevier County; Benny Lynn Johnson was committed by the Juvenile Court for Gibson County; and Billy Nelson Narmore was committed by the Juvenile Court for McMinn County. At the time *habeas corpus* proceedings were begun, petitioner, Mary Ann Huskey, was in custody at the Highland Rim School for Girls, located in Coffee County, and petitioners Johnson and Narmore were each in the custody of the Spencer Youth Center located in Davidson County. All three petitioners filed their petitions for *habeas corpus* relief in the Chancery Court for Davidson County.

The respondents, custodians of the petitioners, filed in each of these three cases a motion to dismiss, asserting that the provisions of Chapter 750 of the Public Acts of 1978,[1] particularly Section 8 thereof, deprived the court of subject matter jurisdiction. Section 8 of that statute, the Juvenile Post–Commitment Procedures Act, provides:

"A petition for habeas corpus shall be treated as a petition under this chapter when the relief and procedure authorized by this chapter appear adequate and appropriate, notwithstanding anything to the contrary in Tennessee Code Annotated, Title 23, Chapter 18, or any other statute."

The position of respondents is that the relief and procedure afforded by the Juvenile Post–Commitment Procedures Act is in fact adequate and appropriate in each of these three cases, so that, each of these petitions should be treated as a petition under that act rather than as a petition for *habeas corpus*; and, treated as a petition for relief under the Juvenile Post–Commitment Procedures Act, the Chancery Court for Davidson County in which these cases were filed is without authority to proceed because, by another section of the Juvenile Post–Commitment Procedures Act, such petition must be filed in the circuit or chancery court of the county in which the judgment of commitment was rendered, that is, petitioner Huskey's petition must be filed in Sevier County, the petition of petitioner Johnson must be filed in Gibson County and the petition of petitioner Narmore must be filed in McMinn County.

The motion to dismiss in each of these cases was heard by the Chancellor upon the petitions and the motions to dismiss, with-

1. Now codified as T.C.A., § 37–1701 *et seq.*

out the introduction of evidence, and determined in favor of the juveniles. Although the Chancellor acknowledged the rule that, generally, one who asserts jurisdiction has the burden of proving that it exists, he held that once the juvenile petitioners had established *prima facie* jurisdiction for *habeas corpus* the "burden of going forward with the evidence" shifted to the respondents to show that both the relief and procedures provided by the Juvenile Post–Commitment Procedures Act were "adequate and appropriate." He concluded that the relief afforded by the Juvenile Post–Commitment Procedures Act was adequate, but, that respondents had failed to show that the procedure offered by that Act was adequate and appropriate. Accordingly, in each case the motion to dismiss was denied. Thereafter, the cases were heard on the merits resulting in the release of all three petitioners upon the ground that they had been denied their constitutional right of counsel in the juvenile court commitment proceedings. The Court of Appeals affirmed the decrees of the Chancellor and this Court granted certiorari.

The only issue presented is that raised by the holding of the two lower courts that the motions to dismiss were properly overruled. The Juvenile Post–Commitment Procedures Act, Chapter 750 of the Public Acts of 1978, now codified as T.C.A., §§ 37–1701 through 37–1722, is a comprehensive statutory scheme to afford relief to juveniles in the custody of the State Department of Correction who wish to attack the validity of their judgments of commitment after the usual appellate remedies have been exhausted. The statute itself, as well as the legislative history surrounding its enactment, make it clear that the remedy thus provided is to be exclusive, leaving the remedy of *habeas corpus* available only in those rare cases in which the new remedy does not appear to be "adequate and appropriate."

Some of the objectives sought to be thus achieved were to relieve the courts of the county in which juveniles are held in custody of the burden of entertaining *habeas corpus* petitions filed by juveniles committed from the other counties throughout the state and to save the time, energy and money expended by juvenile judges, clerks, witnesses and attorneys who often must travel from their home counties to the court of the county in which the juvenile is incarcerated and in which he has filed his petition for *habeas corpus*.

The new act provides for the appointment of counsel and court reporters in cases in which the juvenile is indigent and for transportation of the juvenile petitioner to the hearing of his petition filed in the county of his original commitment.

The Act affords plenary relief as is shown by Section 5 thereof which provides:

"Relief under this chapter shall be granted when petitioner's commitment is void or voidable because of the abridgment in any way of any right guaranteed by the laws or constitution of this state, or the constitution of the United States, including a right that was not recognized as existing at the time of the trial if either constitution requires retrospective application of that right."

There can be no doubt that, as held by the Chancellor and the Court of Appeals, the Act affords adequate and appropriate relief for each of the petitioners in these cases.

Each of the petitioners, however, has asserted that the procedure provided by the new Act is neither adequate or appropriate. The facts alleged to support this insistence are the same in each of the three petitions. Petitioners allege that they cannot afford to employ an attorney to help draft a petition under the Juvenile Post–Commitment Procedures Act and that there are no free legal services available to petitioners in the counties of their commitment; that the Tennessee Department of Correction has no legal services available in its institutions to help juveniles in its custody in the drafting of a petition for post commitment relief and has not provided for the appointment of counsel for petitioners in the counties of their commitment; that each petitioner has available to him or her free legal services in Davidson County but due to lack of resources such free legal services are not available in the counties from which they were committed; that since petitioner's at-

torney is located in Davidson County, it is the most convenient forum. As noted above, no evidence was offered. There is no indication that petitioners have sought to avail themselves of the Juvenile Post–Commitment Procedures Act remedy.

We find no particular in which the relief and procedure authorized by the Juvenile Post–Commitment Procedures Act is either inadequate or inappropriate for the claims asserted by petitioners. That Davidson County is a forum more convenient than the counties of petitioners' commitment or that petitioners' present legal counsel will not be available to represent them in presenting their claims in the counties of their commitment does not, in a legal sense, render the Juvenile Post–Commitment Procedures Act remedy inappropriate or inadequate. The juvenile's right to legal counsel is the same under the new act as under the *habeas corpus* statutes. T.C.A., § 37–1720. The Legislature has not provided that inconvenience of the forum authorized by the Juvenile Post–Commitment Procedures Act shall be deemed ground for authorizing a claimant to disregard the remedy afforded by the Juvenile Post–Commitment Procedures Act and, instead, file his claim as one for *habeas corpus* in the forum nearest to the petitioner's place of confinement. Indeed, one of the principal objectives sought to be accomplished by the new act is to change the forum from the county of confinement to the county of original commitment. To recognize petitioners' claim in this regard would render ineffective a principal feature of the new statutory scheme.

We find precedent for our conclusion in decisions of the federal courts. It is provided by a federal statute that a prisoner in custody under a sentence of a federal court who claims the right to be released upon the ground that his sentence was imposed in violation of the Constitution or laws of the United States, or asserts other grounds of the invalidity of his sentence, may move the court which imposed the sentence to vacate, set aside, or correct the same; and the statute further provides that an application for a writ of *habeas corpus* in behalf of the prisoner who is authorized to apply for relief by motion pursuant to the statute shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention. 28 U.S. C.A. § 2255. A number of cases construing this statute have held that the statutory motion provides a federal prisoner's primary post conviction remedy, rather than a petition for *habeas corpus*, and if relief is possible under the statute it is the exclusive remedy, and *habeas corpus* is barred for the federal prisoner. *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); *Walker v. United States*, 429 F.2d 1301 (5th Cir. 1970); *Barkan v. United States*, 341 F.2d 95 (10th Cir. 1965).

It has been held that the petitioner's distance from the sentencing court does not render the remedy under the statute inadequate or ineffective so as to permit *habeas corpus*, *Adam v. Hagan*, 325 F.2d 719 (5th Cir. 1963); that mere distance between the place of detention of a convicted defendant and the forum of the remedy asserted by the motion to vacate sentence is not a proper guide to the adequacy and effectiveness of that remedy. *Cantu v. Markley*, 353 F.2d 696 (7th Cir. 1965); *Black v. United States*, 301 F.2d 418 (10th Cir. 1962), *cert. denied*, 370 U.S. 932, 82 S.Ct. 1618, 8 L.Ed.2d 832 (1962).

Having concluded that the relief and procedure authorized by the Juvenile Post–Commitment Procedures Act are adequate and appropriate in these cases, it follows, pursuant to the mandate of Section 8 of the Act, that the petitions for *habeas corpus* "shall be treated as [petitions] under" the Juvenile Post–Commitment Procedures Act. So considered, the motions to dismiss should have been granted for it is obvious that the statute has localized the venue of such proceedings in the county in which the judgment of commitment was rendered.

The statute provides:

"To begin proceedings under this chapter, the petitioner shall file a written petition with the clerk of the chancery or circuit court in the county in which the commit-

ment occurred, naming the state of Tennessee as the respondent." T.C.A., § 37-1703.

As we have already noted, one of the principal purposes of the new enactment was to require that claims of this type be adjudicated in the county in which the judgment of the juvenile's commitment was entered. The intent of the Legislature to localize the venue to such counties cannot be doubted. *See, Burns v. Duncan*, 23 Tenn.App. 374, 133 S.W.2d 1000 (1939). Actions are considered to be local when a statute prescribes the particular county in which they must be brought. 92 C.J.S. *Venue* § 8 (1955). *See also, Application of Galante*, 311 F.Supp. 732 (D.C. Pa. 1970), *aff'd* 437 F.2d 1164 (3d Cir. 1970).

The decrees of the Court of Appeals and of the Chancery Court are reversed and the petitions dismissed. Costs incurred upon appeal are taxed against the original petitioners and sureties.

FONES, COOPER and HARBISON, JJ., concur.