IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

E. L. REID,                               )
                                          )
          Claimant/Appellant              )        Claims Commission No. 97-003-192
                                          )
v.                                        )
                                          )        Appeal No. 02A01-9807-BC-00191
STATE OF TENNESSEE,                       )
                                          )
          Defendant/Appellee.             )

**FILED**

**July 23, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

APPEAL FROM THE TENNESSEE CLAIMS COMMISSION
WESTERN DIVISION


THE HONORABLE MARTHA B. BRASFIELD, COMMISSIONER


For the Claimant/Appellant:          For the Respondent/Appellee:

E. L. Reid, Pro Se                    John Knox Walkup
Nashville, Tennessee                  Sohnia W. Hong
                                      Nashville, Tennessee


**AFFIRMED**


HOLLY KIRBY LILLARD, J.


CONCUR:

W. FRANK CRAWFORD, P.J., W.J.

ALAN E. HIGHERS, J.

# OPINION

This is a prisoner property loss claim. The Tennessee Claims Commission dismissed the claim. We affirm.

Claimant/Appellant E. L. (Eldred) Reid ("Reid") is an inmate; during the events relevant to this appeal, he was housed at the Northwest Correctional Center ("NWCC") in Tiptonville, Tennessee. He has since been moved to a different correctional facility.

On April 22, 1996, Reid left his cell to eat his evening meal at about 6:00 p.m. He claims that his cell door was locked and that he was the only inmate with a key to the cell. His cellmate did not , have a key. When Reid returned, commissary items, tobacco, and a lamp were missing.

On May 15, 1996, Reid filed a notice of claim with the Division of Claims Administration ("DCA") alleging that his cell was burglarized due to the negligence of Tennessee Department of Corrections ("TDOC") officials. Reid requested relief in the amount of $110 for the loss of his personal property, including $75 for the loss of the commissary items, and $35 for the loss of the light and light bulb. Reid also sought $100 per day in damages for the loss of the use of his property. In his notice of claim, Reid alleged that TDOC officials were solely responsible for the security of his cell and possessed the only other key. He asserted that, but for the State's negligence, his personal property could not have been stolen. He also claims that the TDOC failed to investigate the theft.

On February 14, 1997, the DCA denied Reid's claim. Reid then filed a notice of appeal with the Claims Commission ("Commission"). In his pleadings before the Claims Commission, Reid attached an affidavit in which he alleged that the correctional center's cell doors have faulty locks that can be picked by other inmates, and that the corrections staff fails to adequately watch cells when inmates are not in their cells, and fails to obtain proper inmate identification before allowing inmates into cells. He also alleged that the TDOC officials are retaliating against him for his activity in the legal system by denying him the ability to make copies of legal documents and denying him medical treatment. He claimed the loss of his clip-on lamp with its special light interfered with his ability to litigate against the defendants.

The State filed a motion for summary judgment on July 18, 1997. In its memorandum in support of its motion for summary judgment, the State argued that it was entitled to summary judgment because Reid failed to prove that the State was negligent in the care, custody and control of his property. Although the State admitted that Reid provided several possible scenarios of how

thieves could have entered his cell, the State asserted that Reid failed to state with specificity an act or omission showing that TDOC officials were responsible for the loss of his property. The State attached an affidavit of Ricky Choate, a correctional officer who was supervising the inmates on April 22, 1996. Choate noted that Reid's cellmate spent the evening braiding another inmate's hair. He asserted that an investigation was not conducted to search for the missing items because they were all commissary items, which "cannot be labeled or permanently engraved."

Reid filed a motion to deny the State's motion for summary judgment and attached an affidavit of his cellmate, Tony S. Maxwell. Maxwell stated that he had been braiding another inmate's hair when the evening meal was called. Maxwell went to his cell, had the officer unlock the door since he did not have a key, washed his hands, and then left the cell. Maxwell stated that he made sure that the door was locked by "pulling and shaking the door." When Maxwell returned from dinner, Reid approached Maxwell and asked if he had had anything stolen from the cell. None of Maxwell's personal property had been stolen. Maxwell asserted that no investigation was done, but that Reid's light could have been identified because it had a name and number scratched on the base.

On November 3, 1997, the Commission entered an order pursuant to Tennessee Code Annotated § 9-8-403 transferring the case to the regular docket.[1] The Commissioner determined

---

[1] The relevant portions of 9-8-403 read:

(a) The commission shall maintain two (2) separate dockets. . . .
(1) A regular docket similar to those maintained by courts of record. A court reporter shall be utilized at all hearings on claims on the regular docket and a record of such proceedings shall be made. These proceedings shall be conducted pursuant to rules of the Tennessee Rules of Civil Procedure where applicable and otherwise pursuant to rules and regulations promulgated by the commission. . . .
(2) A small claims docket consisting of claims satisfying the monetary limit applicable to the general sessions court of Davidson County. No court reporter shall be utilized nor any record made of these proceedings. These proceedings shall be conducted pursuant to rules and regulations promulgated by the commission. If a claimant consents to having the claimant's claim proceed upon affidavits filed with the commission without a hearing, the state shall be deemed to have waived a hearing on the claim unless the state requests a hearing within sixty (60) days after the claim is filed with, or transferred to, the commission. No appeal may be taken from a commissioner's decision regarding claims appearing on the small claims docket.
* * * *
(c) At the discretion of either party at any time prior to a hearing, a claim may be removed from the small claims docket to the regular docket. Once removed, the claim shall be treated like any other claim on the regular docket.
* * * *
(h) Claims based on the negligent care, custody or control of personal property by persons in the legal custody of the state shall proceed on affidavits only, except where the commission determines that witnesses should be heard.

2

that "[i]t would be [a] waste of judicial time and economy to rule on the motion for summary judgment and then issue a ruling on the merits of the case. The motions of the parties will be considered as arguments to support that party's position." The Commissioner noted that an order would then be issued based on the merits of the claim.

On February 19, 1998, the Commissioner dismissed Reid's claim. The Commissioner determined that the request for $100 per day in damages was not a proper measure of damages and therefore would not be considered. The Commissioner also concluded that Reid's request for $110 in damages was without merit since "[t]he State is not an insurer of personal property." The Commissioner stated that "[t]he Commission has consistently held that property of an inmate which is located in his cell is not under the care, custody or control of the TDOC officials, but is under the care, custody or control of the Claimant." The Commissioner noted that thieves could have entered Reid's cell in many ways without negligence by the TDOC, and concluded that Reid had failed to prove negligence by TDOC.

Reid then filed a motion to reconsider or, in the alternative, a notice of appeal as of right. He conceded that there were many ways that his property could have been stolen, but asserted that the only way his property could be removed from his cell was by TDOC officials' gross negligence. For the first time, Reid asserted that he was denied discovery, but pointed to no discovery requests in the record. Reid also sought an *en banc* hearing before the entire Claims Commission.

Reid's motion was denied by the Commissioner. The Commissioner concluded that an *en banc* hearing was not appropriate since Reid failed to allege that the ruling was divergent from the ruling of another commissioner or otherwise needed to be reconciled with other authority.

On April 22, 1998, Reid filed a notice of appeal to the appellate court as a poor person. Attached to this motion was a document titled "Motion for Discovery Already Requested." The certification of service on the discovery request contains the date of February 21, 1997. The document contains no file stamp by the Claims Commissioner.

On May 19, 1998, Reid filed a motion for Rule 11 sanctions, alleging that the State had failed to provide him copies of unpublished opinions cited in its memorandum in support of its motion for summary judgment.

---

Tenn. Code Ann. § 9-8-403(a), (c), (h) (Supp. 1998).

3

On July 6, 1998, the Commissioner determined that Reid was a poor person for purposes of his appeal. On the same day, the Commissioner entered an order ruling that it did not have jurisdiction to rule on Reid's motion for Rule 11 sanctions because the claim was already on appeal to this Court and because the motion was not timely filed. In the alternative, the Commissioner ruled that if it did have jurisdiction, then the motion for sanctions should be denied. The Commissioner found that the State had attached copies of the unreported cases to the motion it filed with the Commission and that "[i]t is not credible that the Clerk and this Commissioner would receive their copies of these unreported cases and the Claimant not receive his copies." The claim was subsequently transferred to this Court for appeal.

On appeal, Reid presents twenty-three issues for our consideration. These can be consolidated into three issues for appeal: whether the Commissioner erroneously denied Reid's discovery request, whether the Commissioner erred in dismissing Reid's claim, and whether the Commissioner erred in ruling that it had no jurisdiction over Reid's Rule 11 sanctions motion.

This case is properly before this Court on direct appeal from the Commission and is governed by the Tennessee Rules of Appellate Procedure. *See* Tenn. Code Ann. § 9-8-403(a)(1) (Supp. 1998). Our review of the Commissioner's findings is *de novo* upon the record of the commission with a presumption of the correctness of the commissioner's factual findings. The decision of the commissioner will be affirmed, unless there is an error of law or the evidence preponderates against the factual findings of the commissioner. *See* Tenn. R. App. P. 13(d); *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. App. 1989).

Reid argues that the Commissioner erred in not allowing him discovery of various matters, such as rules and regulations for the TDOC and the Claims Commission, operating procedures of the correctional facility, staffing requirements, reports or paperwork on his claim, grievances filed for similar thefts, and hiring and training procedures for corrections officers. Reid attached a request for discovery with his notice of appeal filed on April 22, 1998, after the Commissioner had ruled on the merits of his claim. Although the certification of service on the discovery request showed the date of February 21, 1997, the request was not file stamped by the Claims Commissioner. Reid asserts that he sent the request through the prison mail system, but that there was a conspiracy between the Commissioner and the State in which they "mess[ed] with his U.S. mail placed in the

4

prison mail." The record shows that the Commission did not rule or make any findings on Reid's purported discovery request.

The record contains nothing which would indicate that the discovery request was ever filed with the Commission, such as a file stamped copy of the discovery request, an objection to the discovery request by the State, or a motion by Reid seeking to compel discovery. Reid has provided no evidence to this Court that the State or Commission interfered with the prison mail service. Nor has Reid provided evidence that he ever placed the discovery request in the mail system, such as a receipt or log book. There is a presumption at law that court officials have adequately performed their duty. *See Cox v. City of Bristol*, 183 Tenn. 82, 191 S.W.2d 160, 164 (Tenn. 1945); *Burns v. Duncan*, 23 Tenn. App. 374, 133 S.W.2d 1000 (1939). "In the absence of proof to the contrary, ... it will be presumed that official acts or duties have been properly performed . . . ." *Burns*, 133 S.W.2d at 1006. There is a presumption that, if the discovery request had arrived at the Commission, it would have been properly file stamped and entered into the record. Reid has made no showing to rebut this presumption. This issue is without merit.

Reid next argues that the Commissioner erred in dismissing his property loss claim. As in the proceeding below, Reid argues that the State had the sole responsibility to hire and train corrections officers, maintain control over all keys and electronic locks, provide security in the facility, and create procedures to be used by security personnel. He denies having any control over his property after he left the cell. He argues that he alleged specific acts or omissions by the State in his complaint by alleging that, "The pod officer was left to secure the area including cells" and then that "on returning from chow, I descovered [sic] al[sic] commissary . . . had been stolen from the cell under the officer's supervision/security."

In addition, Reid argues that the State's failure to immediately investigate the crime was negligent. He contends that there would have been a high likelihood of recovering the stolen property had there been an immediate investigation, because the light had a serial number and Reid's prison identification number marked on the base and many of the commissary items were similarly marked.

Tennessee Code Annotated § 9-8-307(a)(1)(F) gives the Tennessee Claims Commission jurisdiction over monetary claims against the State arising from the care, custody and control of personal property where the State is negligent in its care, custody and control. *See* Tenn. Code Ann.

5

§ 9-8-307(a)(1)(F) (Supp. 1998).  Absent negligence by the State, it is not liable for an inmate's personal property losses.

The State cites several Tennessee Claims Commission cases for the proposition that, in the absence of negligence, the State is not liable for claims involving theft of property by other inmates. *See Clarke v. State*, Claim No. 105455 (Claims Comm'n Dec. 1, 1993) (holding that "property in an inmate's cell is not in the care, custody or control of the State and an inmate is responsible for his own personal property, unless it is stored in the institution's property room . . . [t]he State is not the insurer of the personal property of inmates"); *Wheeler v. State*, Claim No. 96-222S (Claims Comm'n Dec. 15, 1989) (holding that "[t]he State is not an insurer of property.  The act of theft was an independent, intervening cause over which the State had no control and, therefore, it cannot be held liable."); *Holmes v. State*, Claim No. 04-124 (Claims Comm'n Mar. 14, 1986) (dismissing claim for stolen property for lack of jurisdiction where inmate failed to allege the loss of his property was the result of negligence); *Hopper v. State*, Claim No. 51-461 (Claims Comm'n June 23, 1986) (finding that personal property stolen from inmate's cell was within the possession, custody and control of inmate, not the defendant); *Bays v. State*, Claim No. 70260 (Claims Comm'n Dec. 3, 1986) (dismissing claim because inmate failed to allege any act of negligence by the State).

Reid distinguishes *Bays* by noting that the cell door in that case consisted of bars through which someone could reach in and take property, while the cell door in this case was solid, thus preventing anyone from entering without a key.  He distinguishes *Hooper* and *Clarke* because the claimants in those cases failed to allege that a corrections officer was in control of the area in which the theft occurred.

Essentially, Reid attempts to argue the theory of res ipsa loquitur.  Under the doctrine of res ipsa loquitur, the plaintiff need not prove specific facts of negligence. *See Summitt Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d 91, 96 (Tenn. App. 1983); *Parker v. Warren*, 503 S.W.2d 938, 942 (Tenn. App. 1973).  The requirements for the application of res ipsa loquitur are: (1) there must be a "thing" causing the injury; (2) the "thing" must be under the exclusive control of the defendant, and (3) the "thing" must be shown to be of such a nature that injury does not ordinarily result from its careful management. *See Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. App. 1992).  Plaintiff's evidence must be sufficient to enable the fact-finder to conclude that the injury was caused, more probable than not, by the defendant's negligence. *See Stinnett v. Wright*, 59 Tenn. App. 118, 126,

438 S.W.2d 357, 361 (1963); ***Roberts v. Ray***, 45 Tenn. App. 280, 284, 322 S.W.2d 435, 437 (1958). Thus, the res ipsa loquitur doctrine does not apply where the plaintiff's injury could have reasonably occurred without the defendant's negligence. ***See Cockrum v. State***, 843 S.W.2d 433, 438 (Tenn. App. 1992); ***Brown v. University Nursing Home, Inc.***, 496 S.W.2d 503, 509 (Tenn. App. 1972).

In this case, it is undisputed that the security of his cell and the possessions therein were not under the exclusive control of the State. Sole control by the defendant is an "essential" element to the res ipsa loquitur doctrine. ***See Towle v. Phillips***, 180 Tenn. 1121, 172 S.W.2d 806, 808 (1943). Reid possessed a key to the cell, and his cellmate had access to the cell and thus the State did not have sole control over the cell and its contents. Reid cannot invoke the doctrine of res ipsa loquitur by alleging that one of the parties with access to the cell was negligent, but that *he* was not negligent. "[T]he proof in this case does not meet the standard for it to be a case in which the doctrine of res ipsa loquitor [sic] would be applicable." ***German v. Nichopoulos***, 577 S.W.2d 197, 204 (Tenn. App. 1978). In the absence of proof that the State's negligence caused Reid's loss of personal property, his claim must be dismissed.

Reid also argues that the Commissioner erred in not granting his Rule 11 motion for sanctions based on the State's alleged failure to provide him with copies of unpublished opinions used in its motion. Reid cites Rule 4 of the Tennessee Supreme Court Rules, stating that unpublished opinions shall not be cited in court unless a copy is furnished to the court and adversary counsel. *See* Rules S. Ct. Tenn. 4(5). As stated above, the Commissioner concluded that Reid's Rule 11 motion was filed after Reid filed his notice of appeal and that therefore the Commission did not have jurisdiction to rule on the motion. In the alternative, the Commissioner noted that the unpublished cases were attached to the State's motion filed with the Commission and found that Reid's contention that he did not receive the cases was not credible. Reid asserts that his failure to receive the cases prejudiced him. He argues that the Commissioner ruled on the sanctions issue before he perfected his appeal, and that therefore the Commission had jurisdiction pursuant to Tennessee Code Annotated 9-8-403(a)(1), directing that claims before the Commission be conducted in accordance with the Tennessee Rules of Civil Procedure.

This Court has held that " the filing of the notice of appeal transfers jurisdiction to the Court of Appeals." ***Steele v. Wolfe Sales Co.***, 663 S.W.2d 799, 802 (Tenn. App. 1983); ***see also Granderson v. Hicks***, No. 02A01-9801-JV-00007, 1998 Tenn. App. LEXIS 849 (December 18,

7

1998). "Consequently, the trial court is deprived of jurisdiction to take further action on the case, and an order entered thereafter by the lower court is of no effect." **_Roberts v. Lowe_**, No. 03A01-9610-CC-00333, 1997 Tenn. App. LEXIS 256 (April 16, 1997). Reid filed his notice of appeal on April 22, 1998. The motion for sanctions was filed on May 19, 1998. Therefore, the Commission no longer had jurisdiction and correctly declined to rule on the motion.[2]

In sum, we find that Reid has not shown that he made a discovery request at the trial level, and that his argument that he was improperly denied discovery is therefore without merit. The decision of the Claims Commissioner in dismissing Reid's claim for the loss of his property is affirmed. The Commissioner's dismissal of Reid's motion for Rule 11 sanctions based on lack of jurisdiction is affirmed.

The decision of the Commissioner is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

---

[2] On July 6, 1998, the Commissioner determined that Reid could proceed as a poor person. Although this ruling was entered after the notice of appeal, the trial court retains jurisdiction to make this determination. **_See Watler v. Watler_**, 1994 WL 111023, at *2 (Mar. 30, 1994); **_Dep't of Human Serv. v. Harris_**, No. 01A01-9203-CV-00109, 1992 WL 259288, at *2 (Tenn. App. Oct. 7, 1992) .